Darren H. Goldstein
FLASTER/GREENBERG P.C.
Commerce Center
1810 Chapel Ave. West
Cherry Hill, NJ 08002
Tel.: 856-382-2248
darren.goldstein@flastergreenberg.com

Dale C. Christensen, Jr.
SEWARD & KISSEL LLP
1 Battery Park Plaza
New York, New York 10004
Tel: 212-574-1589
christensen@sewkis.com

Attorneys for Defendant, The Manufacturers Life Insurance Company, 200 Bloor Street East,
Toronto, Ontario Canada, NA M4W-1E5

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| THOMAS F. KANE, SR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO.: 08-4581 |
| | ) |
| THE MANUFACTURERS LIFE | ) |
| INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

**ANSWER AND COUNTERCLAIM**

Defendant, The Manufacturer's Life Insurance Company ("Manulife"), an insurance

company organized under the laws of Canada, by its attorneys Flaster/Greenberg P.C. and

Seward & Kissel LLP, answers the Complaint for Declaratory Judgment (the "Complaint") of

Plaintiff, Thomas F. Kane, Sr. ("Kane" or "Plaintiff"), and states as follows:

## ANSWER

1. Manulife denies the averments of paragraph 1, except states that it owns a security interest in the Plaintiff's limited partnership interest in Adare Partners, L.P. ("Adare").  To the extent that paragraph 1 sets forth conclusions of law, no response is necessary.

2. Manulife denies knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 2, except states that, upon information and belief, Kane has been a resident of New Jersey and Florida at times alleged to be relevant to this action.

3. Manulife denies knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 3, except states that, upon information and belief, Thomas Kane, Jr. ("Kane Jr.") is a son of Kane, and that, at some point in time, Kane Jr. was a general partner of Printon Kane Holdings, L.P. (formerly known as Printon Kane Government Securities, L.P.) ("PKHLP").

4. Manulife denies the averments of paragraph 4, except states that it is an insurance company organized under the laws of Canada, and that its principal place of business is located in Toronto, Ontario Canada.

5. Manulife denies the averments of paragraph 5, except states that, upon information and belief: Adare is a Delaware limited partnership; Adare owns or owned, among other things, real property (including "Adare Manor Resort") in Limerick, Ireland; Kane is or was a limited partner of Adare, although the exact percentage of Kane's ownership interest is unknown to Manulife; and Kane is or was a 50% shareholder and president of Thomas F. Kane, Inc. ("TFKI"), which is the corporate general partner of Adare.

6. Manulife denies knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 6 (erroneously designated in the Complaint as a second

paragraph 5), except states that PKHLP entered into a settlement on December 27, 1995 (the "1995 Settlement").

7.      Manulife admits the averments of paragraph 7.

8.      Manulife denies the averments of paragraph 8, except states that it invested money in PKHLP and certain other related entities.

9.      Manulife admits the averments of paragraph 9.

10.      Manulife denies the averments of paragraph 10, except states that, upon information and belief, at the time of the 1995 Settlement, Kane was indebted to PKHLP for at least $214,055.

11.      Manulife denies the averments of paragraph 11, except states that Kane executed in favor of PKHLP a promissory note dated January 31, 1989, in the principal amount of $4,553,260.70, of which $2,608,856 remained outstanding as of December 27, 1995.

12.      Manulife admits the averments of paragraph 12.

13.      Manulife admits the averments of paragraph 13.

14.      Manulife denies the averments of paragraph 14, except states that, upon information and belief: the Grimmig Action and the Mannello Action were commenced by former PKHLP general partners against PKHLP in the Superior Court of New Jersey, Chancery Division, and those litigations were settled in or around February of 1995.  Defendant Manulife further states that it was not a named party in either the Grimmig or Mannello Actions.

15.      Manulife denies the averments of paragraph 15, except states that it accepted the terms set forth in a February 8, 1995 memorandum of understanding and settlement, which outlined the general terms and conditions agreed upon by the various parties regarding the

ultimate resolution of disputes concerning PKHLP and certain related entities, and refers the Court to that February 8, 1995 memorandum of understanding for the terms therein.

16.     Manulife denies the averments of paragraph 16, except admits that it accepted the terms set forth in a February 8, 1995 memorandum of understanding and settlement, and refers the Court to that document for the terms therein.

17.     Manulife denies knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 17.

18.     Manulife denies the averments of paragraph 18, and states that, as a non-party to the Grimmig and Mannello Actions, it is not subject to any continuing jurisdiction that the Superior Court of New Jersey, Chancery Division may have had (or currently has) over the parties to those actions.  By way of further answer, Manulife states that, in 2006, it initiated an action against Kane and two additional defendants – Adare and TFKI – in the Delaware Chancery Court (the "Delaware Action").  Kane was dismissed as a party to the Delaware Action on or about June 16, 2008 for lack of personal jurisdiction upon his own motion to the court, and then initiated these proceedings in New Jersey.  In the Delaware Action, TFKI asserted that the Delaware Chancery Court was an improper venue based on the Superior Court of New Jersey's purported exclusive and continuing jurisdiction over the matter.  The Delaware Chancery Court rejected that argument, and held on or about September 4, 2007 that Manulife, the plaintiff in the Delaware Action, was not contractually obligated to litigate its claims arising from the Pledge Agreement (annexed as Exhibit 1, and as defined in paragraph 20 below) and the Amended Notes (annexed as Exhibits 2 through 4, and as defined in paragraph 19 below) in the Superior Court of New Jersey, Chancery Division.

19.     Manulife denies the averments of paragraph 19, except states that, in connection with the 1995 Settlement, Kane executed in favor of Manulife certain amended and restated promissory notes (the "Amended Notes") as follows:

      a.     Amended, Restated and Consolidated Secured Promissory Note in the principal amount of $584,307, which evidences, amends, restates and consolidates the indebtedness represented by the Kane PK-85 Note (as defined in paragraph 9 of the Complaint) and the Kane Receivable (as defined in paragraph 10 of the Complaint).  A copy of this note is annexed as Exhibit 2.

      b.     Amended and Restated Promissory Note (Debit Balance Note) in the principal amount of $4,432,398, which evidences, amends and restates the indebtedness represented by the Debit Balance Note (as defined in paragraph 11 of the Complaint).  A copy of this note is annexed as Exhibit 3.

      c.     Amended and Restated Promissory Note (Adare) in the principal amount of $547,075, which evidences, amends and restates the indebtedness represented by the Adare Note (as defined in paragraph 12 of the Complaint).  A copy of this note is annexed as Exhibit 4.

20.     Manulife denies the averments of paragraph 20, except refers the Court to the Amended and Restated Collateral Assignment and Pledge of Interest in Partnership, dated December 27, 1995 and executed by Kane (the "Pledge Agreement"), a copy of which is annexed as Exhibit 1, for the terms therein.

21.     Manulife denies the averments of paragraph 21, refers the Court to its Answer at paragraph 19 above and to the Amended Notes annexed as Exhibits 2 through 4 for their terms, and states that (a) the Amended Note annexed as Exhibit 2 was due and payable on December 1, 2005; (b) the Amended Note annexed as Exhibit 3 was due and payable on December 1, 2005; and (c) the Amended Note annexed as Exhibit 4 was due and payable on December 21, 1998.

22.     Manulife denies the averments of paragraph 22, except states that Gerlach & Co. ("Gerlach") is a nominee entity that holds securities on behalf of Manulife.

23.     Manulife denies the averments of paragraph 23, except states that in or around March of 2006, Manulife made a demand for payment against Kane on the Amended Notes, and on or about December 20, 2006 commenced the Delaware Action against Kane, Adare and TFKI.  Manulife refers the Court to the complaint in the Delaware Action, annexed as Exhibit 5.

24.     Manulife admits the averments of paragraph 24, and refers the Court to the June 16, 2008 order in the Delaware Action, annexed as Exhibit 6.

25.     Manulife denies the averments of paragraph 25, except states that Beaudry I Investors, L.P. ("Beaudry I Investors") owned real property located in Los Angeles, California (the "Beaudry Building"), and, in connection with the 1995 Settlement, Printon Kane Investors Partnership-1985 ("PK-85 Partnership") was merged with Printon Kane Liquidating Company I, L.L.C. ("PKLC I"), and as a result of which PKLC I succeeded to PK-85's limited partnership interests in Beaudry I Investors.

26.     Manulife denies the averments of paragraph 26, except states that the Beaudry Building was sold by Beaudry I Investors on or about October 31, 2001, for a cash purchase price of approximately $73.5 million, together with an assumption by the purchaser of approximately $102 million in mortgage debt underlying the Beaudry Building.  PKLC I received $15.95 million of net proceeds in connection with the sale of the Beaudry Building on account of its limited partnership interest in Beaudry I Investors, and applied those proceeds to various promissory notes (including the Amended Notes) pursuant to Article IV of the Amended and Restated Operating Agreement of PKLC I.

27.     Manulife denies the averments of paragraph 27, except states that it retained Kane Jr. to assist with the negotiations in connection with the sale of the Beaudry Building, and paid Kane Jr. a fee to do so.

28.    Manulife denies the averments of paragraph 28 insofar as they allege that Manulife "released" Kane from the deficiencies on the Amended Notes, and refers to the operative documents for the terms and identity of the parties therein.  Manulife denies knowledge or information sufficient to form a belief as to the truth of the remaining averments in paragraph 28.

29.    Manulife denies the allegations contained in paragraph 29, except states that it paid Kane Jr. a fee to assist with the negotiations in connection with the sale of the Beaudry Building.

30.    Manulife denies the averments of paragraph 30.

31.    Manulife denies the averments of paragraph 31.

32.    Manulife denies the averments of paragraph 32.

33.    Manulife denies the averments of paragraph 33.

34.    Manulife denies the averments of paragraph 34.

35.    Manulife incorporates all the other paragraphs in this Answer and Counterclaim as if set forth at length in this paragraph 35.

36.    Manulife denies the averments of paragraph 36.

37.    Manulife states that the averments of paragraph 37 assert a legal conclusion to which no response is required, and, to the extent any or all of the averments are paragraph 37 are deemed factual, those averments are denied.

38.    Manulife denies the averments of paragraph 38.

39.    Manulife denies the averments of paragraph 39.

## AFFIRMATIVE AND SEPARATE DEFENSES

1.      The Complaint fails to state a claim upon which relief may be granted.

2.      Plaintiff's claims are barred by the doctrine of waiver.

3.      Plaintiff's claims are barred by the doctrine of estoppel.

4.      Plaintiff's claims are barred by the doctrine of laches.

5.      Plaintiff's claims are barred by the statute of frauds because, among other things, New York law and the Uniform Commercial Code ("U.C.C.") bar oral cancellation of negotiable instruments.

6.      Plaintiff's claims are barred by the terms of the contract.

7.      Plaintiff's claims are barred by his prior breach of contractual provision(s).

8.      Plaintiff's claims are barred by his prior breach of the implied covenant of good faith and fair dealing.

9.      Plaintiff's claims are barred by his own fraudulent actions and/or omissions.

10.      Plaintiff's claims are barred by the doctrine of unclean hands.

11.      Plaintiff's claims are barred by the doctrine of accord and satisfaction.

12.      Plaintiff's claims are barred by the statute of limitations.

## COUNTERCLAIM

Defendant, The Manufacturer's Life Insurance Company (as previously defined, "Manulife"), by its attorneys Flaster/Greenberg P.C. and Seward & Kissel LLP, for its counterclaim against Plaintiff, Thomas F. Kane, Sr. (as previously defined, "Kane"), alleges as follows:

**<u>Nature of the Action</u>**

1.      This is an action for (i) declaratory judgment; (ii) breach of payment obligations under promissory notes; (iii) breach of contract; (iv) breach of the implied covenant of good faith and fair dealing; (v) judicial sale; (vi) conversion; and (vii) fraudulent conveyance.

2.      This action involves the parties' rights and obligations under certain promissory notes (as previously defined, the "Amended Notes") delivered to Manulife in connection with a settlement by and between Manulife, Kane, and others, concerning Printon Kane Holdings, L.P. (formerly known as Printon Kane Government Securities, L.P.) (as previously defined, "PKHLP") and certain related entities, entered into in or around December 1995 (as previously defined, the "1995 Settlement"), and secured by the collateral referenced in the Amended and Restated Collateral Assignment and Pledge of Interest in Partnership (as previously defined, the "Pledge Agreement"), annexed as Exhibit 1.

3.      The collateral securing the Amended Notes consisted of pledges of Kane's (a) membership interest in PK Liquidating Company I, L.L.C., a Delaware limited liability company (as previously defined, "PKLC I"), and (b) limited partnership interest in Adare Partners, L.P., a Delaware limited partnership (as previously defined, "Adare").

**<u>The Parties and Related Entities</u>**

4.      Manulife is an insurance company organized under the laws of Canada.  *See* Compl. ¶ 3; *see also* Answer ¶ 4.

5.      As noted in the Complaint, at relevant times, Kane was a citizen of either New Jersey or Florida.  *See* Compl. ¶ 2; *see also* Answer ¶ 2.

6.      Upon information and belief, Kane was a citizen of Florida at the time of the filings of the pleadings in this matter.

7.      PKHLP was a limited partnership organized under the laws of the State of Delaware.  *See* Compl. ¶ 5; Answer ¶ 5.  PKHLP was liquidated on or about December 27, 1995.  *See id.*  At the time of liquidation, Kane was a principal of PKHLP and Manulife was the sole preferred limited partner of PKHLP.

8.      Adare was formed by Kane and organized under the laws of the State of Delaware.  *See* Compl. ¶ 5; Answer ¶ 5.

9.      Upon information and belief, Adare owns "Adare Manor Resort," a golf resort located in Ireland.  *See id.*

10.     Upon information and belief, Kane is a limited partner of Adare, and holds at least a 15.4% limited partnership interest in Adare.  *See id.*

11.     Upon information and belief, Thomas F. Kane, Inc. (as previously defined, "TFKI"), a Delaware corporation formed by Kane, is the general partner of Adare.  *See id.*

12.     Upon information and belief, Kane is the president of TFKI.  *See id.*

13.     PKLC I and PK Liquidating Company II, L.L.C. ("PKLC II") are limited liability companies organized under the laws of the State of Delaware.

14.     PKLC I and PKLC II were created to hold assets related to the liquidation of PKHLP.

15.     Specifically, PKLC I was formed to hold limited partnership interests in Beaudry I Investors, L.P. (as previously defined, "Beaudry I Investors"), a limited partnership organized under the laws of the State of California, which owned real property located in California (as previously defined, the "Beaudry Building").  *See generally* Compl. ¶ 25; Answer ¶ 21.

**Jurisdiction and Venue**

16.     The amount in controversy herein, exclusive of interest and costs, exceeds

$75,000.

17.     This Court has diversity jurisdiction over the subject matter of the action pursuant

to 28 U.S.C. § 1332 because it is between a citizen of a State and a citizen of a foreign state.

18.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(d) and 1446.

**Facts**

**A.     Background**

19.     Manulife entered into a business relationship with PKHLP in approximately the

early 1980s.  Compl. ¶ 7.

20.     Over the course of the parties' relationship, Manulife invested in PKHLP and

other related entities controlled by Kane.  *See* Compl. ¶ 8.

**B.     The 1995 Settlement, the Amended Notes and the Pledge Agreement**

21.     PKHLP was liquidated on or about December 27, 1995 (as previously defined, the

"1995 Settlement").  *See* Compl. ¶ 5; Answer ¶ 5

22.     Pursuant to the 1995 Settlement, PKHLP's remaining assets were transferred into

two companies, one of which was PKLC I.

23.     As part of the 1995 Settlement, Kane issued to Manulife a series of promissory

notes for a total face value of $5,563,780 (as previously defined, the "Amended Notes"): (a)

Amended and Restated Promissory Note in the principal amount of $584,307 (as previously

defined, "Amended Note A" - annexed as Exhibit 2); (b) Amended and Restated Promissory

Note (Debit Balance Note) in the principal amount of $4,432,398 (as previously defined,

"Amended Note B" – annexed as Exhibit 3); and (c) Amended and Restated Promissory Note

(Adare) in the principal amount of $547,075 (as previously defined, "Amended Note C" – annexed as Exhibit 4).  *See* Compl. ¶ 19; Answer ¶ 19.

24.     The Amended Notes were issued by Kane in exchange for good and valuable consideration.

25.     The Amended Notes were payable to Gerlach & Co., a nominee entity that holds securities on behalf of Manulife.

26.     The Amended Notes were secured by collateral consisting of pledges of Kane's interest in PKLC I and his then 24% limited partnership interest in Adare (the "Collateral"), as reflected in the Pledge Agreement.  *See* Ex. 1.  Kane signed the Pledge Agreement both in his capacity as president of TFKI, the general partner of Adare, and in his personal capacity.

27.     Pursuant to the terms of the Pledge Agreement, "so long as any portion" of the Amended Notes remained outstanding, certain financial and other information relating to Adare was required to be delivered to Manulife.  Such information would have provided Manulife with an ability to evaluate the Collateral, in which it had an enforceable interest, and prepare for taking action on the Amended Notes in the event of Kane's default.

28.     In connection with the 1995 Settlement, Manulife consented to a proposed reorganization of Adare, which proposal contemplated the admission or the creation of a new "Class D" limited partnership interest, which would result in the dilution of Kane's limited partnership interest in Adare.

29.     Upon information and belief, at some point after the 1995 Settlement, Adare did create a limited partnership interest that it characterized as a "Class D" limited partnership. Whether that Class D interest is consistent with the Class D interest to which Manulife consented is unknown.

**C.**     **The Sale of the Beaudry Building**

30.     In October 2001, the Beaudry Building, PKLC I's sole asset, was sold.

31.     The sale generated approximately $15.95 million of net proceeds to PKLC I. Kane's allocable share of such proceeds, approximately $3,761,275, was paid to Manulife as a mandatory prepayment of the Amended Notes, but did not satisfy the entire balance of the Amended Notes.

**D.**     **Kane's Various Defaults**

32.     The documents and other information Kane was obligated to deliver to Manulife pursuant to the terms of the Pledge Agreement have not been delivered by Kane to Manulife.

33.     Within the last year, Manulife received evidence (primarily by way of discovery from Adare and TFKI in connection with the Delaware Action) that Adare, since the 1995 Settlement, (a) issued the Class D limited partnership interests detailed above, and (b) subsequently re-purchased those Class D limited partnership interests.

34.     In connection with the referenced issuance of the Class D interests, upon information and belief, Kane's limited partnership ownership interests in Adare were diluted from 24% to 17.4%.

35.     The effect of Adare's re-purchase of the Class D limited partnership interests should have had the effect of increasing the remaining partners' limited partnership interests in Adare on a pro rata basis.  However, additional discovery obtained in the Delaware Action shows that, while Kane's family members' and possibly others' limited partnership interests in Adare were increased, upon information and belief, Kane's own limited partnership interests in Adare were further decreased from 17.4% to 15.4%.

36.     In contravention of his obligations pursuant to the Pledge Agreement and the Amended Notes, Kane, directly and through his control of Adare and TFKI, knowingly allowed his limited partnership interest in Adare to be diluted, while allowing the interests of his family members and possibly others to increase.

37.     Kane intentionally failed to provide Manulife with documents and information concerning these various dilutions and reallocation of limited partnership interests in Adare.

### *Improper Distributions by Adare to Kane*

38.     Pursuant to the terms of the Pledge Agreement, Kane was required to – and agreed to – turn over to Manulife any and all distributions, proceeds and payments Kane was entitled to by virtue of his ownership interests in the pledged Collateral.

39.     Upon information and belief, Adare made numerous distributions to Kane, none of which Kane tendered to Manulife.

40.     In the interrogatories submitted by Adare and TFKI in connection with the Delaware Action, both entities admitted to having distributed at least $400,000 to Kane in his capacity as a limited partner of Adare.

41.     Kane admitted to assisting with the preparation of the interrogatories referenced in paragraph 40 above.

42.     Manulife was not apprised of the fact that Kane actually received such distributions until it received discovery in the Delaware Action on or about September 13, 2007.

43.     Upon information and belief, Kane intentionally and willfully withheld these distributions, as well as any information concerning these distributions, in contravention of the Pledge Agreement and Amended Notes.

*Kane's Refusal to Pay Amounts Due under the Amended Notes*
*and Manulife's Enforcement Efforts*

44. The amounts owed under the Amended Notes had become due by December 31, 2005.

45. Kane did not pay the amounts owed under the Amended Notes when the amounts came due.

46. In a letter to Kane dated March 13, 2006, Manulife demanded the payment of approximately $8 million in unpaid principal and interest owed and due on the Amended Notes. A copy of this letter is annexed as Exhibit 7.

47. Despite written demand, Kane has not paid Manulife the sum owed and due under the Amended Notes.

48. In December 2006, Manulife initiated an action against Kane, Adare, and TFKI in the Delaware Chancery Court (as previously defined, the "Delaware Action") to ascertain the parties' rights and obligations under the Pledge Agreement and the Amended Notes.

49. Kane moved to dismiss that action for lack of personal jurisdiction in Delaware.

50. The Delaware Chancery Court entered an order granting Kane's motion to dismiss for lack of personal jurisdiction on or about June 16, 2008.

51. Adare and TFKI remain defendants in the Delaware Action, and Manulife is actively pursuing separate remedies as against Adare and TFKI for their respective breaches of the Pledge Agreement.

## COUNT ONE
### (Breach of Payment Obligations Under the Amended Notes)

52. Manulife incorporates all the other paragraphs in this Answer and Counterclaim as if set forth at length in this paragraph.

53.     Kane's refusal to pay the approximately $8 million in principal and interest due and owing under the Amended Notes constitutes a breach of the Amended Notes' payment obligations.

54.     Manulife has suffered and continues to suffer injury as a result of Kane's breach.

55.     Kane is personally liable for such breach and for all resulting damages as a result of his improper and/or unlawful acts and omissions (including breach of trust) described throughout this Answer and Counterclaim.

56.     Therefore, Manulife is entitled to compensatory damages, consequential damages, punitive damages, interest, attorneys' fees, costs of suit, and such further relief as the Court deems just.

**COUNT TWO**
**(Judgment Declaring Rights and Obligations of Manulife and**
**Kane with Respect to the Collateral as a Result of Kane's Defaults)**

57.     Manulife incorporates all the other paragraphs in this Answer and Counterclaim as if set forth at length in this paragraph.

58.     Kane executed the Amended Notes and the Pledge Agreement willingly, knowing in sum and substance the terms therein.  The Amended Notes and the Pledge Agreement are valid and binding contracts and obligations.

59.     Section 8 of the Pledge Agreement defines an "Event of Default" as "the occurrence of any failure, beyond any applicable grace period, by Kane in the due observance or performance of any term, covenant, agreement or condition contained in the Amended Notes [and] this [Pledge] Agreement."

60.     Kane breached the clear and unambiguous terms of the Amended Notes by, among other things, his refusal to pay the balance of the Amended Notes at maturity and upon Manulife's demand for payment.

61.     These breaches constituted Events of Default pursuant to the Pledge Agreement.

62.     Kane also breached the clear and unambiguous terms of the Pledge Agreement by refusing to comply with certain terms therein, including, but not limited to, his failure to comply with (a) Section 2, which required that he direct Adare to pay to Manulife certain proceeds and payments to which Kane was entitled; (b) Section 5, which required that Kane "do such other acts and things and to execute such further documents as may be necessary or desirable to give effect the this [Pledge] Agreement and to perfect the security interest hereby granted in favor of Manulife,"; and (c) Section 6, which required that Kane cause to be delivered to Manulife certain financial information.

63.     These breaches also constituted Events of Default pursuant to the Pledge Agreement.

64.     Kane's breaches constituted Events of Default, upon the occurrence of which Manulife, among other things, may exercise all rights, powers and remedies available to it under the Pledge Agreement or under the U.C.C.  Ex. 1 ¶ 9.

65.     More than two years have passed since Manulife initially demanded payment from Kane of the amounts owed and due to Manulife pursuant to the Amended Notes and the Pledge Agreement.

66.     Kane has expressly denied liability for the amounts owed and due under the Amended Notes.

67.     An actual and justiciable controversy exists between Manulife and Kane as to their respective rights and obligations under the Amended Notes and the Pledge Agreement. By reason of the foregoing, Manulife is entitled to a judgment declaring that (a) Kane has defaulted under the express terms of the Amended Notes and the Pledge Agreement; (b) an "Event of Default" (or multiple Events of Default) as defined in Section 8 of the Pledge Agreement have occurred and, by reason of Kane's defaults, Manulife is entitled to exercise its rights under the Pledge Agreement; and (c) Manulife may exercise all of its remedies and rights pursuant to the Amended Notes and the Pledge Agreement.

68.     Manulife further seeks a declaration that it is entitled to all damages resulting from its enforcement and collection of the amounts due it, including all interest, attorneys' fees, costs of suit, and such further relief as the Court deems just.

## COUNT THREE
### (Breach of Section 6 of the Pledge Agreement (failure to provide documents and other information))

69.     Manulife incorporates all the other paragraphs in this Answer and Counterclaim as if set forth at length in this paragraph.

70.     Section 6 of the Pledge Agreement requires Kane to deliver certain financial information and other documents relating to Adare to Manulife.

71.     Kane has failed to comply with Section 6 of the Pledge Agreement and, as a result, Manulife has suffered and continues to suffer injury.

72.     Therefore, Manulife is entitled to compensatory damages, consequential damages, punitive damages, interest, attorneys' fees, costs of suit, and such further relief as the Court deems just.

## COUNT FOUR
### (Breach of Section 2 of the Pledge Agreement (improper receipt by Kane of distributions from Adare))

73.     Manulife incorporates all the other paragraphs in this Answer and Counterclaim as if set forth at length in this paragraph.

74.     Section 2 of the Pledge Agreement entitles Manulife to certain distributions to which Kane is entitled until the full amount of outstanding principal and interest on the Amended Notes is paid.  The Pledge Agreement is a valid and binding contract.

75.     Kane knowingly, and improperly, received funds from Adare without notifying Manulife, and without remitting such funds to Manulife, as required by the Pledge Agreement.

76.     Kane has breached Section 2 of the Pledge Agreement and, as a result, Manulife has suffered and continues to suffer injury.

77.     Additionally, as set forth in Article 10 (ii) of each of the Amended Notes (Exs. 2-4 hereto), Manulife is entitled to collect directly from Kane "any cash or property received by [Kane] as a distribution from PKLC I or Adare."

78.     Therefore, Manulife is entitled to compensatory damages, consequential damages, punitive damages, interest, attorneys' fees, costs of suit, and such further relief as the Court deems just.

## COUNT FIVE
### (Breach of Section 5 of the Pledge Agreement (improper dilution by Kane of his limited partnership interests in Adare))

79.     Manulife incorporates all the other paragraphs in this Answer and Counterclaim as if set forth at length in this paragraph.

80.     In Section 5 of the Pledge Agreement, Kane "agree[d] to maintain the Pledge Interest free from any liens (except for those created by this Agreement) and to do such other

acts and things and to execute such further documents as may be necessary or desirable to give effect to this Agreement and to perfect the security interest hereby granted in favor of Manulife."

81.     Kane breached Section 5 by taking actions which adversely affected Manulife's interests in the pledged collateral including, but not limited to, his willful dilution of the Collateral and his wrongful distribution of a percentage of his limited partnership interests in Adare to his family members and possibly others.

82.     Section 9 of the Pledge Agreement preserves Manulife's rights to "exercise all rights, powers and remedies available to it hereunder" in the "Event of Default," by Kane, which terms is defined as "the occurrence of any failure, beyond any applicable grace period, by Kane in the due observance or performance of any term, covenant, agreement or condition contained in the Amended Notes [and] this [Pledge] Agreement."

83.     Kane's failure to properly preserve Manulife's property interests in the Collateral constitutes a breach of the Pledge Agreement.

84.     Therefore, Manulife is entitled to compensatory damages, consequential damages, punitive damages, interest, attorneys' fees, costs of suit, and such further relief as the Court deems just.

## COUNT SIX
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

85.     Manulife incorporates all the other paragraphs in this Answer and Counterclaim as if set forth at length in this paragraph.

86.     Kane's improper and/or unlawful acts and omissions, as described throughout this Answer and Counterclaim, constitute breach of the implied covenant of good faith and fair dealing in the Amended Notes and the Pledge Agreement.

87.     Manulife has suffered and continues to suffer injury as a result of Kane's breach.

88.     Therefore, Manulife is entitled to compensatory damages, consequential damages, punitive damages, interest, attorneys' fees, costs of suit, and such further relief as the Court deems just.

**COUNT SEVEN**
**(Judicial Sale)**

89.     Manulife incorporates all the other paragraphs in this Answer and Counterclaim as if set forth at length in this paragraph.

90.     As a result of the events of default by Kane under the Amended Notes and Pledge Agreement, the Pledge Agreement permits Manulife to foreclose the Collateral and obtain a judicial sale.

91.     The Court should require that Kane cause to be delivered to Manulife any additional information required to market effectively Manulife's interest in the Collateral.

92.     To ensure that the maximum value for the Collateral is achieved, the Court should hold a judicial sale.

**COUNT EIGHT**
**(Conversion)**

93.     Manulife incorporates all the other paragraphs in this Answer and Counterclaim as if set forth at length in this paragraph.

94.     The Pledge Agreement granted Manulife a 24% interest in the Collateral unless and until Kane's obligations under the Amended Notes were satisfied and a right to Adare distributions.

95.     Kane intentionally, willfully, and without authority from Manulife interfered with Manulife's right of possession to the pledged limited partnership interest in Adare and distributions from Adare.

96.     As a result of Kane's actions, Manulife has suffered and continues to suffer injury.

97.     Therefore, Manulife is entitled to compensatory damages, consequential damages, punitive damages, interest, attorneys' fees, costs of suit, and such further relief as the Court deems just.

## COUNT NINE
### (Fraudulent Conveyance)

98.     Manulife incorporates all the other paragraphs in this Answer and Counterclaim as if set forth at length in this paragraph.

99.     Kane fraudulently conveyed his limited partnership interest in Adare to his family members and possibly others, without informing Manulife of said conveyance, and with the intent of defrauding and/or hindering payments owed to Manulife.

100.    As a result of Kane's fraudulent conveyance(s), Manulife has suffered and continues to suffer injury.

101.    Manulife requires discovery to ascertain which individuals or entities may need to be joined as parties to this action in light of Kane's fraudulent conveyance, and will name said parties at a future time, to the extent it is feasible and appropriate to do so.

102.    Therefore, Manulife is entitled to compensatory damages, consequential damages, punitive damages, interest, attorneys' fees, costs of suit, and such further relief as the Court deems just.

**WHEREFORE,** The Manufacturer's Life Insurance Company requests entry of judgment in its favor and against Thomas F. Kane, Sr. and an award of compensatory damages, consequential damages, punitive damages, interest, attorneys' fees, costs of suit, and such further relief as the Court deems just.

DATED: September 19, 2008

Respectfully submitted,

s/ *Darren H. Goldstein*

Darren H. Goldstein
FLASTER/GREENBERG P.C.
Commerce Center
1810 Chapel Ave. West
Cherry Hill, NJ 08002
Tel: 856-382-2248
darren.goldstein@flastergreenberg.com

OF COUNSEL:

Dale C. Christensen, Jr.
Seward & Kissel LLP
1 Battery Park Plaza
New York, New York 10004
Tel: 212-574-1589
christensen@sewkis.com