**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CHAMBERS OF<br>**MICHAEL A. SHIPP**<br>UNITED STATES MAGISTRATE JUDGE | MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST.   ROOM 2042<br>NEWARK, NJ 07102<br>973-645-3827 |

Not for Publication

**LETTER OPINION & ORDER**

May 26, 2010

**VIA CM/ECF**
All Counsel of Record

    Re:   **Kane v. The Manufacturers Life Insurance Co.**
           **Civil Action No. 08-4581 (KSH)(MAS)**

Dear Counsel:

In response to a subpoena issued by Defendant The Manufacturers Life Insurance Company ("Manulife" or "Defendant") on or about March 1, 2010 (the "Subpoena"), Plaintiff Thomas F. Kane ("Kane" or "Plaintiff") submitted letter briefs asserting that the documents Defendant seeks are protected by the attorney-client privilege and/or the work product/trial preparation doctrine. (Doc. Nos. 52 ("Pl.'s March 24th Br.") and 62 ("Pl.'s April 6th Br.").)  Defendant disagrees, asserting that the documents are not protected and may be properly produced.  (Doc. Nos. 53 ("Def.'s March 26th Br."), 59 ("Def.'s April 1st Br.") and 63 ("Def.'s April 8th Br.").)  Non-party Adare Partners, L.P. ("Adare") also submitted a position letter brief.  (Doc. No. 58 ("Adare's Ltr. Br.").)

For the reasons set forth herein, Plaintiff's request that this Court find that the subpoenaed information may be protected from disclosure under the attorney-client privilege and/or work product doctrine based on an agent relationship with Kane Jr. is denied without prejudice.

I.     **SUMMARY OF FACTS**

Since the parties are well-versed in the surrounding facts underlying this matter, the Court will address only those facts relevant to the issues currently pending before this Court.

On March 1, 2010, Defendant issued the Subpoena against Thomas F. Kane, Jr. ("Kane Jr."), Plaintiff's son and a non-party to the within litigation. The Subpoena commanded that Kane Jr. produce and permit the inspection and copying of several documents, which were described in an attached list. (Pl.'s March 24th Br. 1, Exh. A.) Plaintiff's counsel advised the Defendant that he believed the documents requested were protected by the attorney-client privilege and/or the work product doctrine and that at the very least Plaintiff should be provided with an opportunity to review the documents prior to their production. (*Id.* at 1-2.) According to Plaintiff, compliance with the Subpoena will likely require the production of documents that "include communications between Kane Jr. and Plaintiff's counsel, documents prepared by Plaintiff's counsel, and documents prepared by Kane Jr. in connection with this litigation," which is protectable under New York's attorney-client privilege. (*Id.* at 2.)

Plaintiff argues that Kane Jr. acted as Plaintiff's agent or representative when communicating with Plaintiff's present and former counsel, as he facilitated communications with Plaintiff and his counsel and also communicated with Plaintiff's counsel to assist with the preparation and/or defense of Plaintiff's claims. (*Id.* at 3-4.) In permitting such communications, Plaintiff asserts that he fully intended and expected that the communications involving Kane Jr. would remain confidential. (*Id.* at 4.) While Plaintiff disclosed certain communications during a court-ordered mediation, Plaintiff takes the position that he did not waive any privileges, as such disclosures were for settlement negotiation purposes only, and therefore, remain confidential. (Pl.'s April 6th Br. 3-5.) Finally, Plaintiff also contends that the work product doctrine protects many of the documents sought, because the

2

production may include documents prepared by Plaintiff's current or former counsel and/or documents prepared by Kane Jr. in anticipation of this litigation. (Pl.'s March 24th Br. 5.)

Defendant, on the other hand, argues that the documents at issue are not protected by the attorney-client privilege or work product doctrine. (Def.'s March 26th Br. 1.) Defendant explains that Plaintiff has an issue with documents in which Kane Jr. makes statements pertaining to this litigation, including criticisms pertaining to Plaintiff's claims, which in Defendant's opinion are "unquestionably relevant." (*Id.*) According to Defendant, Kane Jr. is not Plaintiff's agent or representative, because:

(i) Kane Jr. did not retain or select Kane's counsel. (*Id.*);
(ii) Plaintiff's counsel does not represent Kane Jr. (*Id.*);
(iii) Plaintiff has not suggested that Kane Jr. participated in attorney-client discussions that also involved Plaintiff and Plaintiff's counsel. (*Id.*);
(iv) Kane Jr. is not needed in order for Plaintiff and Plaintiff's counsel to request or transmit legal advice. (*Id.*);
(v) Plaintiff has not suggested that Kane Jr. has authority to act on Plaintiff's behalf with regard to legal advice. (*Id.*);
(vi) Plaintiff alleges that Kane Jr. was Defendant's agent in connection with the Beaudry Building sale, as Defendant retained Kane Jr. for services in connection with the sale. (*Id.*);
(vii) Kane Jr. and Manulife's counsel have had numerous, extended private communications over the past few months, about which Plaintiff's counsel was aware. (Def.'s April 8th Br. 2.);
(viii) Kane Jr. has voluntarily provided Manulife's counsel with certain documents, about which Plaintiff's counsel was aware. (*Id.*); and
(ix) Plaintiff's counsel also subpoenaed documents from Kane Jr., making an agent relationship unlikely. (*Id.*)

Thus, Defendant argues, Kane Jr. is a non-party fact witness who has relevant knowledge pertaining to the Beaudry Building sale in 2001 regarding collateral pledged by Plaintiff to the Defendant, which is relevant to this litigation. (*Id.*)

Regarding the court-ordered mediation, Defendant argues that Plaintiff pre-planned and intentionally and blatantly disclosed certain documents, as he distributed pre-copied packages that contained approximately fifteen email messages in the presence of his counsel, James Moriarity,

3

Esq. and John Rabinowitz, Esq., as well as Adare's counsel Gerard Cosgrove, Esq. (Def.'s April 8th Br. 2.) Defendant further notes that during the mediation, Plaintiff discussed the documents in the package for more than two hours in counsel's presence and that no counsel objected nor suggested that any documents were inadvertently produced. (*Id.*)

Non-party Adare also expressed concerns regarding the Subpoena.[1] Adare submitted a letter brief "for the limited purpose of preventing the disclosure of Adare's privileged and/or confidential documents sought by Manulife," as Kane Jr. is a limited partner of Adare. (Adare's Ltr. Br. 1, fn. 1.) Adare notes that the Subpoena requests

> all documents referring or relating to Adare Partners, L.P., Adare Manor, the Amended and Restated Collateral Assignment and Pledge of Interest in Partnership (Adare Partners, LP), dated December 27, 1995 . . . [and] any pending or prior dispute by or among any or all of Judy Kane, Kane, [Kane Jr.] and/or any other persons that in any way concerns Adare Partners, L.P. and/or Adare Manor.

(*Id.* at 2.) According to Adare, in his capacity as a limited partner, Kane Jr. has engaged in discussions with Adare's general counsel in Ireland, Gerard Cosgrove, with regard to topics concerning the partnership, including matters pertaining to this litigation or potential litigation that would involve Adare and Manulife, which would be protected by the attorney-client privilege. (*Id.*) Adare further notes that Kane Jr. participated in settlement negotiations related to the Delaware and New Jersey litigations. (*Id.* at 4.) Adare takes the position that any documents regarding communications between Kane Jr. and Mr. Cosgrove are protected. (*Id.*)

In response to Adare's letter brief, Defendant contends that the subpoenaed documents will not require the production of any documents or communications pertaining to Adare's concerns. (Def.'s

---

[1] This Court will address Adare's concerns as a courtesy. Any rulings made in this Opinion and Order shall not be binding on Adare. However, because Adare was permitted to file a position letter with regarding to the informal motion currently before this Court, Adare may take this Court's rulings into advisement in deciding how to proceed with regard to the Subpoena.

April 1st Br. 1.) The communications at issue involve Kane Jr. and either Jonathan I. Rabinowitz or Jim Moriarity, Esq., Plaintiff's counsel, regarding Kane Jr.'s opinions about the Beaudry Building sale, which Plaintiff has raised in counterclaims and defenses in this matter. (*Id.* at 2.) It is Defendant's understanding that the communications do not relate to Adare, particularly because Adare has not raised any concerns or issues relating to the sale. (*Id.*) Moreover, Defendant asserts that Plaintiff waived any privilege that may have existed. (*Id.*) For instance, Kane Jr. sent an email message to Jim Moriarity on June 11, 2009, which was subsequently forwarded to Adare's counsel, Gerard Cosgrove. (*Id.*)

## II.   LEGAL STANDARD & ANALYSIS

### A. The Attorney-Client Privilege

Since jurisdiction of the instant matter is based upon diversity jurisdiction, the applicability and scope of the attorney-client privilege is controlled by state law. *See* Fed. R. Evid. 501; *In re Ford Motor Co.*, 110 F.3d 954, 965 (3d Cir. 1997), abrogated for unrelated reasons in *Mohawk Indus, Inc. v. Carpenter*, No. 08-678, 2009 U.S. LEXIS 8942 (Dec. 8, 2009); *Fahs Rolston Paving Corp. v. Pennington Properties Develop. Corp.*, No. 03-4593, 2006 U.S. Dist. LEXIS 93588, **7-8 (D.N.J. Dec. 27, 2006). Generally, the law of the forum state applies. *In re Human Tissue Products Liability Litig.*, 255 F.R.D. 151, 156 (D.N.J. 2008). Under New York law, the privilege is applied narrowly, as it has "the effect of withholding relevant information from the factfinder . . . ." *Stenovich v. Wachtell, Lipton, Rosen & Katz*, 756 N.Y.S.2d 367, 376 (Super. Ct. 2003). The privilege affords protection to a client seeking legal advice from his or her attorney and provides the clients with confidence that the information will not be divulged without the client's consent. *People v. Osorio*, 549 N.E.2d 1183, 1185 (N.Y. App. Ct. 1989). Thus, "[t]he privilege belongs to the client and attaches if information is disclosed in confidence to the attorney for the purpose of obtaining legal advice or services." *Id.*

5

The party asserting the privilege must demonstrate that the privilege is applicable and that it has not been waived, by way of providing competent evidence rather than conclusory assertions. *See Stenovich, supra,* 756 N.Y.S.2d at 379; *Delta Fin. Corp. v. Morrison,* 829 N.Y.S.2d 877, 884 (Sup. Ct. 2007). Under New York law, "[c]ommunications between a client and an attorney made in the presence of third parties are not privileged." *Osorio, supra,* 549 N.E.2d 1186. Also, even if the privilege has been properly demonstrated, the privilege may "yield in a proper case where strong public policy requires disclosure." *Osorio, supra,* 549 N.E.2d at 1185 (citations omitted).

Notably, New York courts have extended the attorney-client privilege to include communications between an attorney and a client's agent or representative. *Stroh v. Gen. Motors Corp.,* 213 A.D.2d 267, 268 (N.Y. App. Div. 1995) (communications between a 76- year old mother's daughter and her attorney were protected as privileged, because the daughter selected the law firm on behalf of her mother, drove her to the law office for meetings and provided her mother with moral support, thereby finding that the daughter was acting as the mother's agent and that the mother had a reasonable expectation of confidentiality); *see also Sevenson Envtl. Serv., Inc. v. Sirius Am. Ins. Co.,* 64 A.D.3d 1234, 1236 (N.Y. App. Div. 2009); *Stenovich v. Wachtell, Lipton, Rosen & Katz,* 756 N.Y.S.2d 367 (Sup. Ct. 2003); *Robert V. Straus Prod., Inc. v. Pollard,* 289 A.D.2d 130, 131 (N.Y. App. Div. 2001); *First Am. Commercial Bancorp, Inc. v. Saatchi & Saatchi Rowland, Inc.,* 56 A.D.3d 1137, 1138-39 (N.Y. App. Div. 2008). In New York, "[a] principal and agent relationship may be established by evidence of consent by one person to allow another to act on his or her behalf and subject to his or her control." *In the Matter of the Petition of Mindy Horowitz,* Slip. Op. 51316U, 2007 N.Y. Misc. LEXIS 4709, at *2 (Sur. Ct. June 21, 2007) (citing *Time Warner City Cable v. Adelphi Univ.,* 813 N.Y.S.2d 113 (App. Div. 2006)). Notably, an

6

agency relationship "may be implied from the conduct of the parties or established by proof of subsequent ratification." *Kozecke v. Humble Oil & Refining Co.*, 362 N.Y.S.2d 272, 274 (App. Div.1974); *see Matter of Weinberg*, 509 N.Y.S.2d 240 (Sur. Ct. 1986) (finding privilege not waived, where daughter acted as her father's agent by communicating with counsel on behalf of her father and was involved in several business enterprises with father's permission and confidence). The scope of the privilege is not dependent on the third-parties' employment or function, but rather, "it depends on whether the client had a reasonable expectation of confidentiality under the circumstances." *Osorio, supra*, 549 N.E.2d at 1186.

However, "[t]he protective cloak of privilege against revealing confidential communications does not extend to information which an attorney secures from a witness while acting for his client in anticipation of litigation." *Montgomery Ward Co. v. City of Lockport*, 255 N.Y.S.2d 433, 435 (Super. Ct. 1964) (quoting *Hicks v. Taylor*, 329 U.S. 495, 508 (1937)). Moreover, in keeping with the narrow construction and application of the attorney-client privilege, if a court finds that the privilege was waived as to one document or communication, then the waiver generally extends to all communications pertaining to the same subject matter of the initial document that led to the waiver. *See Bristol Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, No. 95-8833, 1997 U.S. Dist. LEXIS 20692, at **3-4, 9 (S.D.N.Y. Dec. 31, 1997) (noting that:

> It would not be fair to allow [defendant] to waive privilege with respect to this supportive document while withholding potentially adverse documents addressing the same subject matter. [Defendant] may not selectively produce reports that favor its position while withholding reports that are potentially adverse to its position. Having released the report, [defendant] must now release other documents relating to

the same subject matter); *Thai Merry Co., Ltd. v. BIC Corp.*, No. 96-5256, 1997 U.S. Dist. LEXIS 16902, at *6 (S.D.N.Y. Oct. 30, 1997) ("In view of plaintiffs' waiver of the attorney-client privilege

with respect to the materials already produced, plaintiffs have waived their privileges to communications on the entire subject matter.").

Plaintiff argues that Kane Jr. acted as Plaintiff's agent when he communicated with Plaintiff's current and former counsel. (Def.'s March Br. 3.) According to Plaintiff, Kane Jr. facilitated communications between Plaintiff and counsel and assisted counsel with preparing Plaintiff's litigation and defenses. (*Id.* at 4.) Plaintiff asserts that he had knowledge of all such communications involving Kane Jr. and his counsel, always expecting that such communications would remain confidential. (*Id.*) With regard to the June 11, 2009 email message from Kane Jr. to Jim Moriarty, Plaintiff contends that he did not waive the privilege, as that document was produced in the course of a court-ordered mediation, and is therefore, protected by Federal Rule of Evidence 408 as confidential. (Pl.'s April 6th Br. 2-3, 5, fn. 3.) Also, even assuming *arguendo* that the privilege or work product was waived, Plaintiff asserts that the waiver would relate only to that specific communication and would not function as a blanket waiver to all protected communications. Finally, even if the Court finds a subject matter waiver, Plaintiff takes the position that the waiver would only apply to communications between Kane Jr. and Mr. Moriarty, as only one attorney-client communication was provided to the Defendant, which was a June 11, 2009 email message to Mr. Moriarty. (*Id.* at 6.)

Defendant vehemently disagrees with Plaintiff's assertions, arguing that Kane Jr. was not and is not a "necessary intermediary" for Kane and Kane's counsel. (Def.'s March 26th Br. 3.) According to Defendant, there is simply no evidence that Kane Jr. communicated with Plaintiff's counsel on behalf of Kane or that Kane Jr. was otherwise needed or necessary for Plaintiff to effectively communicate with his counsel. (*Id.*) Defendant describes Plaintiff as a sophisticated, savvy businessman who does not need a conduit for Plaintiff's relationship with counsel. (*Id.*) Moreover, if Kane Jr. was Manulife's

8

agent, as pleaded by Plaintiff, then communications between Kane Jr. and Plaintiff's counsel would not be protected, especially because Kane Jr. and Plaintiff were in a legal dispute over issues pertaining to Adare Partners, LP, a company that they both own. (*Id.*, citing *Osorio, supra*, 550 N.Y.S.2d at 615 (conflict between party and purported agent rendered expectation of confidentiality unreasonable).) Even more telling, Defendant asserts, is that in March 2009, Plaintiff's personal counsel, James Moriarity, Esq., discussed Plaintiff's claims against Kane Jr., during which counsel advised Kane Jr. to retain personal counsel if Kane Jr. felt it was appropriate and/or necessary. (Def.'s April 8th Br. 2.)

Next, Defendant argues that disclosure of the documents is necessary, as Kane Jr. approved the sale of the Beaudry Building on behalf of all partners of PKLC I, which includes Plaintiff and Defendant. (Def.'s March 26th Br. 3.) Defendant further contends that the case law cited by Plaintiff in support of the agent relationship arguments asserted are distinguishable, explaining that those cases involved: (i) agents that were necessary or that involved communications in which the client, attorney and agent were all present; or (ii) parties that were not disputing whether the agent had authority to act on behalf of one of the parties. (*Id.* at 3-4.) "Simply put, Kane Jr. is a non-party witness who has openly communicated with both parties' counsel. There are no grounds for either party to claim privilege as to those communications." (*Id.* at 4.)

Finally, Defendant takes the position that Plaintiff's voluntary production of documents during the mediation, in the presence of Plaintiff's and Adare's counsel, waived any protection if such a protection ever existed in the first instance, which Defendant argues it did not. (Def.'s April 8th Br. 3.) Defendant points out that the Mediation Order provides that if documents produced during the mediation are "outside of the scope of discovery as set forth in F.R.C.P. 26(b), such documents and information shall be subject to all applicable settlement privileges." (*Id.*)

9

According to Defendant, the documents are squarely in the parameters of the scope of discovery and are directly responsive to Manulife's various discovery requests. (*Id.*) Also, the settlement privilege under Federal Rule of Evidence 408 is inapplicable, as that only relates to admissibility concerns and not discovery production. (*Id.*)

Adare also requests that this Court prohibit the production of any attorney-client privileged documents between Kane Jr. and its general counsel, Gerard Cosgrove. (Adare's Ltr. Br. 2, citing *Pucci v. Santi*, 711 F. Supp. 916, 927 (N.D. Ill. 1989) (holding that the attorney for a limited partnership represents each partner, whether limited or general).) Like Plaintiff, Adare states that Federal Rule of Evidence 408 protects any communications regarding settlement negotiations. Therefore, Adare asserts that communications between Kane Jr. and Gerard Cosgrove are confidential. (*Id.* at 4.)

Here, this Court finds that Plaintiff failed to demonstrate that communications made between Kane Jr. and Plaintiff's counsel are protected by the attorney-client privilege. While the privilege may extend to "necessary intermediaries and agents through whom confidential communications are made" (*People v. Hairston*, 444 N.Y.S.2d 853, 855 (1981)), this Court finds that Plaintiff has not demonstrated that Kane Jr. was or is a "necessary" agent. Plaintiff merely provided conclusory statements in support of his assertions and failed to address the facts and events that may have destroyed any existing agent relationship, such as: (i) Plaintiff's filing of claims against Kane Jr., Kane Jr. acting as an agent for Defendant, and/or (ii) the legal disputes pertaining to Adare and involving both Kane and Kane Jr.

There is simply no evidence currently before this Court that demonstrates that Kane allowed Kane Jr. to act on his behalf. While Kane's current and/or former counsel may have had discussions with Kane Jr. related to or in anticipation of this litigation, or any other litigation, the privilege does not extend to information provided to or secured from a non-party or third-person, such as Kane Jr.

Thus, without further demonstration of an agent relationship between Kane and Kane Jr., this Court must deny without prejudice Plaintiff's request to find that communications involving Kane Jr. and Plaintiff's current or former counsel are protected by the attorney-client privilege. Likewise, more information is needed from Adare to assess whether the attorney-client privilege is applicable to all the communications involving Kane Jr. and Adare's general counsel.

Regarding Adare's argument that responsive documents to the Subpoena may be confidential and protected by the attorney-client privilege, this Court is persuaded by Adare's position. Since Kane Jr. is a limited partner of Adare and based on the broad scope of the Subpoena, Adare is correct that responsive documents may include communications between Kane Jr. and Adare's general counsel in Ireland, Gerard Cosgrove. (*See* Adare's Ltr. Br. 2.) However, this Court does not agree with Adare's assertion that all communications between Kane Jr. and Mr. Cosgrove are protected, as the attorney-client privilege only protects limited communications that were made in connection with a litigation or in furtherance of obtaining or seeking legal advice. Moreover, certain circumstances and occurrences may have resulted in a waiver of the privilege. Accordingly, this Court finds good cause to require Kane Jr. to produce any responsive documents pertaining solely to communications between Kane Jr. and Adare to Adare's counsel. Adare's counsel shall then review the documents and serve any non-privileged communications upon Manulife. To the extent that Adare asserts a privilege for any communications, it shall prepare and serve a detailed privilege log upon Manulife, and the parties shall then meet and confer to discuss and attempt to resolve any disagreements pertaining to documents Adare claims are privileged. Any remaining disputes shall be brought to this Court's attention, along with a copy of the disputed documents, for this Court's *in camera* review of same. While Adare is a non-party and need not

11

abide by this Opinion and Order, this Court will consider and treat Adare's failure to comply as a waiver of any objections.

### B. The Work Product Doctrine

The purpose of the work-product privilege is to safeguard any work-product from disclosure to an adversary or opponent. *In re Grand Jury (Impounded)*, 138 F.3d 978, 981 (3d Cir. 1998). "Unlike the attorney-client privilege, the work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in Fed. R. Civ. P. 26(b)(3) . . . ." *United Coal Co. v. Powell Constr. Co.*, 839 F.2d 958, 966 (3d Cir. 1988). Under Federal Rule of Civil Procedure 26(b)(3), the work-product doctrine shields the disclosure of certain documents "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative." This doctrine is "distinct from and broader than the attorney-client privilege." *U.S. v. Nobles*, 422 U.S. 225, 238 (1975).

The party asserting the work-product privilege has the burden of demonstrating that the documents he or she claims are privileged were "prepared in anticipation of litigation." *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 138 (3d Cir. 2000). Courts within the Third Circuit apply the following two-part test when considering whether the work-product privilege protects the disclosure of certain documents: (i) the reasonable anticipation test; and (ii) whether the documents in question were prepared with the primary purpose of litigation. *La. Mun. Police Employees Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 306 (D.N.J. 2008) (citing *In Re Gabapentin Patent Litig.*, 214 F.R.D. 178, 183 (D.N.J. 2003); *Paris v. R.P. Scherer Corp.*, No. 02-1044, 2006 U.S. Dist. LEXIS 47413, at *2 (D.N.J. July 13, 2006)). The first element, the reasonable anticipation test, requires a two-part analysis: (i) there must be a finding that the litigation underlying the alleged work-product "could reasonably have been anticipated;" and (ii) based on the underlying facts and situation, a court must find

that the motivation behind the creation and preparation of the document can reasonably be said to have been the prospect of litigation. *Id.* (internal citations omitted); *see also Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1260 (3d Cir. 1993); *U.S. v. Rockwell*, 897 F.2d 1255, 1266 (3d Cir. 1990). The second element requires an analysis as to whether the documents were created for the primary purpose of the litigation itself. *La. Mun. Police Employees Ret. Sys., supra,* 253 F.R.D. at 306. If the documents were produced for purposes other than the litigation, but prove useful in the litigation at issue, the documents are not protected by the work-product privilege. *Id.* at 307.

Generally, the privilege only protects documents prepared by an attorney or party to the action at issue. *See* 8 C. Wright, A. Miller & R. Marcus, *Federal Practice & Procedure: Civil* § 2024 at 354-56 (2d ed. 1994) ("documents prepared by one who is not a party to the present suit are wholly unprotected by Rule 26(b)(3) even though the person may be a party to a closely-related lawsuit in which he will be disadvantaged if he must disclose in the present suit"); *Kirschbaum v. WRGSB Assocs.*, No. 97-5532, 1998 U.S. Dist. LEXIS 8860, at *3 (E.D. Pa. June 18, 1998) ("documents created on behalf of a non-party are not protected by the work product rule. The rule exists to protect the privacy of the preparations of the attorneys and agents engaged in litigation. There is no reason to extend this protection to a non-party."). Moreover, disclosure of attorney work-product may be permitted if "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). However, the court "must protect against disclosure of the mental impressions, conclusions, opinions or legal theories of a party's attorney or other representative concerning the litigation." *Id.* at R. 26(b)(3)(B); *The Times of Trenton Publ'g Corp. v. Pub. Util. Serv. Corp.*, No. 03-6026, 2005 U.S. Dist. LEXIS 34624, at *13 (D.N.J. May 3, 2005).

13

Notably, while the work-product privilege is not absolute, waiver of the privilege is difficult to establish. *The Times of Trenton Publ'g Corp., supra,* 2005 U.S. Dist. LEXIS, at **13-14. To demonstrate that the privilege was waived, a party must show that the privileged information was disclosed to an adversary or disclosed in a manner that will allow an adversary to gain access to same. *Id.* at **14-15. Thus, disclosure to a non-adversary third-party does not necessarily result in a waiver of the privilege. *Id.* (finding that dissemination of status reports to six family members who comprised the upper management of the company, which were sent with the purpose of keeping the members informed of the company's activities and the pending litigation, did not result in a waiver of the work-product privilege. The reports were disseminated with the understanding and intent that the information was to remain confidential and not be widely-distributed).

According to Plaintiff, any work product or documents prepared by Kane Jr. or Plaintiff's current or former counsel in anticipation of or as part of litigation that are encompassed by the Subpoena need not be produced, as the documents are protected. (Pl.'s March 24th Br. 5.) Plaintiff asserts that Defendant has already noticed the deposition of Kane Jr., and as such, Defendant will likely receive the "substantial equivalent" of the information it seeks during the deposition. (*Id.* at 5-6.)

Additionally, Adare contends that some of the documents that may be produced as a result of the Subpoena includes work product that was "prepared by Kane Jr., Mr. Cosgrove and/or Adare's Delaware counsel for the benefit of Adare in anticipation of or for the Delaware litigation." (Adare's Ltr. Br. 3.) If the Court finds that the aforementioned documents are not protected by the attorney-client privilege, it is Adare's position that same documents are protected as work product and should not be produced. (*Id.*)

14

Defendant asserts that because Kane Jr. is not Plaintiff's agent or representative, that the work product privilege is wholly inapplicable. (Def.'s March 26th Br. 1.) Stated differently, Defendant contends that any documents prepared or collected by Kane Jr. are not protected because the materials exchanged between Kane Jr. and Plaintiff's counsel are not work-product. (*Id.* at 4.) Defendant notes that Plaintiff does not argue that the documents were prepared by his counsel or that they contain counsel's mental impressions regarding communications or interviews with Kane Jr., and as such, the documents are not protected by the work product doctrine. (*Id.* at 4-5.) Moreover, even if Kane's counsel prepared a statement for Kane Jr. as a witness, such documents are not protected by the work product doctrine. (*Id.* at 5, citing *Ford Motor Co. v. Edgewood Props., Inc.*, 257 F.R.D. 418, 422-23 (D.N.J. 2009) ("Attorneys frequently work with witnesses to prepare their statements, and an attorney's choice to confine testimony to certain areas is inherent in their preparation. Expanding the [work-product] doctrine in this area would render otherwise discoverable statements protected by the doctrine, the primary purpose of which is to protect counsel's trial strategies and mental impressions, not its choice as to an affiant's testimony of underlying facts.").)

Again, Plaintiff failed to demonstrate an agent relationship between Kane and Kane Jr., which would trigger the work product doctrine. Thus, Plaintiff's request that this Court find that the subpoenaed information is protected by the work product doctrine is denied without prejudice. However, as stated above, this Court is persuaded by Adare's assertion that certain documents may be protected under either the attorney-client privilege and/or work product doctrine. Therefore, Adare shall be provided with an opportunity to review the relevant documents and to meet and confer with Manulife in a good faith attempt to resolve any disputes and/or objections.

### III. CONCLUSION

Based on the foregoing, Plaintiff's request that this Court find that the subpoenaed information may be protected from disclosure under the attorney-client privilege and/or work product doctrine based on an agent relationship with Kane Jr. is denied without prejudice. It is further ORDERED that:

1. Kane Jr. shall produce and serve all documents that are responsive to the Subpoena and that involve communications between Kane Jr. and Adare's general counsel in Ireland, Gerard Cosgrove, upon Adare by **June 3, 2010**.

2. All other communications and documents that are otherwise responsive to the Subpoena and do not involve communications between Kane Jr. and Gerard Cosgrove shall be served upon Defendant by **June 3, 2010**.

3. Upon receipt of the documents from Kane Jr., Adare may draft and provide a detailed privilege log to Defendant, with a copy to the Court by **June 17, 2010**. Should Adare elect to draft and provide such a privilege log, at a minimum, the privilege log shall include specific, detailed facts pertaining to any documents alleged to be confidential and/or privileged, and shall include:

    (i) Detailed summaries and descriptions of all communications and documents;

    (ii) Adare's basis for asserting a privilege; and,

    (iii) A list of all the authors and recipients of any communications and documents.

    Failure to provide a privilege log by **June 17, 2010** shall be deemed a waiver of any objections and Kane Jr. shall serve all remaining responsive documents upon the Defendant immediately thereafter.

5. Defendant and Adare shall meet and confer at an agreed upon time and location by **June 24, 2010**. During the meet and confer, the parties shall go through each and every document listed in the privilege log to see whether the parties can reach an agreement as to whether documents should or should not be produced. The parties shall be guided by the legal standard and analysis set forth in this Opinion and Order.

6. If Defendant and Adare are unable to agree on whether certain documents should or should not be produced, Adare shall provide the relevant documents to this Court for an *in camera* review by **July 1, 2010**. In such event, Adare shall also provide an informal letter brief, setting forth specific, detailed facts and arguments as to how

and why the documents are privileged. Failure to submit an informal letter brief by **July 1, 2010** shall result in this Court treating it as a waiver of any objections and Kane Jr. shall produce all remaining documents upon the Defendant immediately thereafter.

7. If necessary, Defendant shall file a response to Adare's letter brief by **June 8, 2010**.

8. Absent extenuating circumstances, no extensions shall be provided.

9. Failure to comply with the terms and provisions of this Order may result in sanctions.


                                                            s/Michael A. Shipp
                                            **HONORABLE MICHAEL A. SHIPP**
                                            **UNITED STATES MAGISTRATE JUDGE**