Darren H. Goldstein
Donna T. Urban
FLASTER/GREENBERG P.C.
Commerce Center
1810 Chapel Ave. West
Cherry Hill, NJ 08002
Tel.: 856-661-1900
darren.goldstein@flastergreenberg.com
donna.urban@flastergreenberg.com

Attorneys for Defendant, The Manufacturers Life Insurance Company, 200 Bloor Street East,
Toronto, Ontario Canada, NA M4W-1E5
And Additional Counterclaim Plaintiff Gerlach (Nominee) & Co., L.L.C., c/o Corporation
Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| THOMAS F. KANE, SR.,<br>　　　　　Plaintiff/Counterclaim Defendant,<br><br>　　v.<br><br>THE MANUFACTURERS LIFE INSURANCE<br>COMPANY, Defendant/Counterclaim Plaintiff,<br><br>and<br><br>GERLACH (NOMINEE) & CO. L.L.C., Additional<br>Counterclaim Plaintiff,<br><br><br>　　v.<br><br>JUDY KANE,<br>　　　　　Additional Counterclaim Defendant. | CIVIL ACTION NO.: 08-4581-KSH-MAS |

**FIRST AMENDED COUNTERCLAIM AS AGAINST JUDY KANE ONLY**

Defendant, The Manufacturer's Life Insurance Company ("Manulife"), and Additional

Counterclaim Plaintiff, Gerlach (Nominee) & Co., L.L.C. ("Gerlach") (collectively the

"Counterclaim Plaintiffs"), by their attorneys Flaster/Greenberg P.C., hereby file this First

Amended Counterclaim as against Additional Counterclaim Defendant, Judy Kane, to name

Gerlach as a party and allege as follows.

## Nature of the Action

1.      This is an action for (i) declaratory judgment; (ii) breach of payment obligations

under promissory notes; (iii) breach of contract; (iv) breach of the implied covenant of good faith

and fair dealing; (v) judicial sale; (vi) conversion; (vii) fraudulent conveyance; and (viii) tortious

interference with economic advantage.

2.      On September 28, 2011, Thomas Kane filed a petition for relief under chapter 7 of

title 11 of the United States Code (the Bankruptcy Code) in the United States Bankruptcy Court

for the Southern District of Florida, thereby staying this action as to Thomas Kane.  Accordingly,

Gerlach and Manulife do not assert any claims or seek any relief as against Thomas Kane in this

First Amended Counterclaim (subject to their right to do so if legally permitted to in the future if,

for example, there is a subsequent determination by the Bankruptcy Court lifting or limiting the

stay).

3.      This action involves the parties' rights and obligations under certain promissory

notes (the "Amended Notes") delivered to Manulife in connection with a settlement by and

between Manulife, Thomas Kane ("Kane"), and others, concerning Printon Kane Holdings, L.P.

(formerly known as Printon Kane Government Securities, L.P.) ("PKHLP") and certain related

entities, entered into in or around December 1995 (the "1995 Settlement"), and secured by the

collateral referenced in the Amended and Restated Collateral Assignment and Pledge of Interest

in Partnership (the "Pledge Agreement"), annexed as Exhibit 1.

4.      The collateral securing the Amended Notes consisted of pledges of Kane's (a)

membership interest in PK Liquidating Company I, L.L.C., a Delaware limited liability company

("PKLC I"), and (b) limited partnership interest in Adare Partners, L.P., a Delaware limited partnership ("Adare").

<u>**The Parties and Related Entities**</u>

5.      Manulife is an insurance company organized under the laws of Canada.

6.      Gerlach (Nominee) & Co., L.L.C. is a Delaware limited liability company, whose sole member is Citibank, N.A. ("Citibank"), a national banking association located in South Dakota.

7.      As noted in the Amended Complaint, at all relevant times, including at the time of the filings of the pleadings in this matter, Kane was a citizen of either New Jersey or Florida.

8.      At all relevant times, including at the time of the filings of the pleadings in this matter, Judy Kane ("Mrs. Kane"), wife of Kane, was a citizen of either New Jersey or Florida.

9.      PKHLP was a limited partnership organized under the laws of the State of Delaware.  PKHLP was liquidated on or about December 27, 1995.  At the time of liquidation, Kane was a principal of PKHLP and Manulife was the sole preferred limited partner of PKHLP.

10.      Adare was formed by Kane and organized under the laws of the State of Delaware.

11.      Upon information and belief, Adare owns "Adare Manor Resort," a golf resort located in Ireland.

12.      Upon information and belief, Kane is a limited partner of Adare, and holds at least a 15.4% limited partnership interest in Adare.

13.      Upon information and belief, Thomas F. Kane, Inc. ("TFKI"), a Delaware corporation formed by Kane, is the general partner of Adare.

14.      Upon information and belief, Kane is the president of TFKI.

15.     Upon information and belief, at certain relevant times, Kane was the sole shareholder of TFKI and, at other relevant times, both Kane and Mrs. Kane were the sole shareholders of TFKI.  Upon information and belief, at all relevant times, Kane and/or Mrs. Kane controlled TFKI and, accordingly, controlled Adare.

16.     PKLC I and PK Liquidating Company II, L.L.C. ("PKLC II") are limited liability companies organized under the laws of the State of Delaware.

17.     PKLC I and PKLC II were created to hold assets related to the liquidation of PKHLP.

18.     Specifically, PKLC I was formed to hold limited partnership interests in Beaudry I Investors, L.P. ("Beaudry I Investors"), a limited partnership organized under the laws of the State of California, which owned real property located in California (the "Beaudry Building").

## Jurisdiction and Venue

19.     The amount in controversy herein, exclusive of interest and costs, exceeds $75,000.

20.     This Court has diversity jurisdiction over the subject matter of the action pursuant to 28 U.S.C. § 1332 because it is between a citizen of a State and a citizen of a foreign state.

21.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(d) and 1446.

## Facts

**A.     Background**

22.     Manulife entered into a business relationship with PKHLP in approximately the early 1980s.  *See* Am. Compl. ¶ 7.

23.     Over the course of the parties' relationship, Manulife invested in PKHLP and other related entities controlled by Kane.  *See* Am. Compl. ¶ 8.

**B.     The 1995 Settlement, the Amended Notes and the Pledge Agreement**

24.     PKHLP was liquidated on or about December 27, 1995 (the "1995 Settlement"). *See* Am. Compl. ¶ 6 (incorrectly numbered as ¶ 5).

25.     Pursuant to the 1995 Settlement, PKHLP's remaining assets were transferred into two companies, one of which was PKLC I.

26.     As part of the 1995 Settlement, Kane issued to Manulife a series of promissory notes for a total face value of $5,563,780 ("Amended Notes"): (a) Amended and Restated Promissory Note in the principal amount of $584,307 ("Amended Note A" - annexed as Exhibit 2); (b) Amended and Restated Promissory Note (Debit Balance Note) in the principal amount of $4,432,398 ("Amended Note B" – annexed as Exhibit 3); and (c) Amended and Restated Promissory Note (Adare) in the principal amount of $547,075 ("Amended Note C" – annexed as Exhibit 4).

27.     The Amended Notes were issued by Kane in exchange for good and valuable consideration.

28.     The Amended Notes were payable to a nominee entity, Gerlach & Co., a general partnership (the "Partnership").

29.     Despite that the parties concede the debt reflected in the Amended Notes arises from debt owed by Kane to Manulife, late in this action, and after the close of discovery, Kane untimely raised the issue that Manulife lacks standing to sue under the Amended Notes.  Upon information and belief, Mrs. Kane intends to pursue this claim.

30.     After Kane raised this issue, Manulife promptly obtained the "Confirmation of Beneficial Ownership" Agreement dated March 9, 2011 from Gerlach and Citibank confirming, among other things, that the Amended Notes evidence obligations of Kane to Manulife (not to Gerlach), and that Manulife always had the sole right to institute actions under the Amended Notes.

31.     Shortly thereafter it became apparent that "Gerlach (Nominee) & Co.," rather than "Gerlach & Co." is the current entity acting as a nominee with respect to the Amended Notes, and also that the Confirmation of Beneficial Ownership did not specifically provide that it may be attached as an allonge.  In a revised form of the Confirmation of Beneficial Ownership, Citibank and Gerlach confirmed that

(1)     in 2001 "Gerlach & Co." transferred all of its interests held as a nominee for Citibank's customers, including any interest in the Amended Notes, to "Gerlach (Nominee) & Co.," and thereafter Gerlach & Co. dissolved;

(2)     the Amended Notes evidence financial obligations of Kane to Manulife alone, and not to Gerlach or to Gerlach's owner Citibank; neither Gerlach nor Citibank would obtain any financial benefit from the repayment of the Amended Notes or incur any financial loss in the event the Amended Notes are not repaid; and Manulife is now and always has been the sole beneficial owner of the Amended Notes;

(3)     Manulife has always had the sole right and authority to institute legal actions under the Amended Notes;

(4)     Gerlach directs Kane to pay all amounts due under the Amended Notes to the order of Manulife, and agrees to execute such additional instruments as Manulife may reasonably request to effect an endorsement of the Notes from Gerlach to Manulife;

(5)     Gerlach transfers legal title to the Notes to Manulife, making Manulife the "Holder" thereof within the meaning of the Amended Notes; and

(6)     the Confirmation of Beneficial Ownership may be attached to the Amended Notes and serve as an allonge for purposes of the Uniform Commercial Code. *See* April 7, 2011 Confirmation of Beneficial Ownership attached, collectively with the March 9, 2011 Confirmation of Beneficial Ownership, as Exhibit 5.

32.     Manulife disputes that it lacks standing because, among other things, (a) the Amended Notes arose from debt owed to Manulife, (b) the related documents reflect debt owed to Manulife, including the Amended Notes which expressly provide that they are secured by the pledge agreements from Kane to Manulife, and reference payments under those agreements, (c) Kane delivered the Amended Notes to Manulife, (d) Kane and Manulife at all times treated the Amended Notes as debt owed to Manulife, (e) the accounting records of Manulife produced to Kane in discovery reflect that Kane's debt was always owed to Manulife, (f) Kane corresponded with Manulife regarding the Amended Notes in 1999, and was well aware that his over $3.7 million payment against the Amended Notes in 2001 from the sale of the Beaudry Building (other collateral securing the Amended Notes) was required to be and was in fact paid to Manulife, and (g) Kane himself sued Manulife in this litigation.

33.     Although Manulife disputes that it lacks standing to bring this action and maintains that it always had authority to enforce the Amended Notes, Manulife amends its counterclaim to include Gerlach as a Counterclaim Plaintiff out of an abundance of caution and to preserve any claims Gerlach may have from the running of any applicable statute of limitations.

34.     The Amended Notes were secured by collateral consisting of, among other things, pledges of Kane's interest in PKLC I and his then 24% limited partnership interest in Adare (the "Collateral").  As reflected in the Pledge Agreement, *see* Ex. 1, Kane pledged "a security interest in all limited partnership interests owned directly or indirectly by Kane in Adare (including without limitation, the 24.00% limited partnership interests held in the name of Kane) and all proceeds of such interest" (the "Pledged Interest").  Kane signed the Pledge Agreement both in his capacity as president of TFKI, the general partner of Adare, and in his personal capacity.

35.     At all relevant times, both Kane and Mrs. Kane were aware of the obligations of Kane and Adare under the Amended Notes and under the Pledge Agreement.

36.     Pursuant to the terms of the Pledge Agreement, "so long as any portion" of the Amended Notes remained outstanding, certain financial and other information relating to Adare was required to be delivered to Manulife.  Such information would have provided Manulife with an ability to evaluate the Collateral, in which it had an enforceable interest, and prepare for taking action on the Amended Notes in the event of Kane's default.

37.     In connection with the 1995 Settlement, Manulife consented to a proposed reorganization of Adare, which proposal contemplated the admission or the creation of a new "Class D" limited partnership interest, which would result in the dilution of Kane's limited partnership interest in Adare.

38.     Upon information and belief, at some point after the 1995 Settlement, Adare did create a limited partnership interest that it characterized as a "Class D" limited partnership.  That Class D interest created by Adare is not consistent with the Class D interest to which Manulife consented.

**C.     The Sale of the Beaudry Building**

39.     In October 2001, the Beaudry Building, PKLC I's sole asset, was sold.

40.     The sale generated approximately $15.95 million of net proceeds to PKLC I.  Kane's allocable share of such proceeds, approximately $3,761,275, was paid to Manulife as a mandatory prepayment of the Amended Notes, but did not satisfy the entire balance of the Amended Notes.

**D.     Kane's Various Defaults**

41.     The documents and other information Kane was obligated to deliver to Manulife pursuant to the terms of the Pledge Agreement have not been delivered by Kane to Manulife.

42.     Primarily after the Delaware Action and this present action were commenced, Manulife received evidence that Adare, since the 1995 Settlement, (a) issued the Class D limited partnership interests detailed above, and (b) subsequently re-purchased those Class D limited partnership interests.

43.      In connection with the referenced issuance of the Class D interests, upon information and belief, Kane's limited partnership ownership interests in Adare were apparently diluted from 24% to 17.4%.

44.     The effect of Adare's re-purchase of the Class D limited partnership interests should have had the effect of increasing the remaining partners' limited partnership interests in Adare on a pro rata basis.  However, additional discovery obtained in the Delaware Action

shows that, while Kane's family members' and possibly others' limited partnership interests in Adare were increased, upon information and belief, Kane's own limited partnership interests in Adare were further decreased from 17.4% to 15.4%.

45.    In contravention of his obligations pursuant to the Pledge Agreement and the Amended Notes, Kane, directly and through his control of Adare and TFKI, knowingly allowed his limited partnership interest in Adare to be diluted, while allowing the interests of his family members and possibly others to increase.

46.    Kane intentionally failed to provide Manulife with documents and information concerning these various dilutions and reallocation of limited partnership interests in Adare.

**E.    Improper Distributions And Other Payments by Adare to Kane, Mrs. Kane, TFKI and Others**

47.    Pursuant to the terms of the Pledge Agreement, Kane was required to – and agreed to – turn over to Manulife "proceeds and payments to which Kane may be entitled by virtue of the Pledged Interest in Adare . . . ."

48.    Upon information and belief, Adare made numerous distributions to Kane, all of which Kane improperly failed to tender to Manulife.

49.    Upon information and belief, Adare also made numerous distributions and other payments to TFKI (and possibly to Mrs. Kane and to others) which were in turn distributed to Kane by virtue of his limited partnership interest in Adare.  Kane also improperly failed to tender any of these payments to Manulife.

50.    In the interrogatories submitted by Adare and TFKI in connection with the Delaware Action, both entities admitted to having distributed at least $400,000 to Kane in his capacity as a limited partner of Adare.

51.     Kane admitted to assisting with the preparation of the interrogatories referenced in paragraph 50 above.

52.     Manulife was not apprised of the fact that Kane actually received such distributions until it received discovery in the Delaware Action on or about September 13, 2007.

53.     Upon information and belief, Kane intentionally and willfully withheld these distributions, as well as any information concerning these distributions, in contravention of the Pledge Agreement and Amended Notes.

54.     Moreover, by virtue of Kane's interest in the Pledged Interest, Kane was entitled to a certain percentage (at most relevant times equal to 24%) of the total of all distributions and other payments made by Adare to any partners in Adare, except to the extent that payments to other partners were earned for services performed or were otherwise appropriate for some legitimate purpose.

55.     Tax returns and other financial information provided by Kane confirm that Kane and Mrs. Kane diverted distributions and other payments to Mrs. Kane, to TFKI, and to others that should have been made to Kane by virtue of his interest in the Pledged Interest (which, in turn, should have been paid to Manulife) including, without limitation, the following:

        (a)     distributions and other payments to partners in Adare, other than Kane, which distributions and payments were disproportionately larger than the recipients' Adare ownership interests, unrelated to any services performed by the recipients, and not otherwise appropriate for any legitimate purpose;

        (b)     in particular, in 2007, Kane (purportedly having a 15.4% interest) received Adare distributions of $67,567, while Mrs. Kane (purportedly having a 17.4% interest) received distributions of $1,714,074.

(c)      management fees and "guaranteed payments" paid to TFKI and to others

notwithstanding that they were not related to any services performed and not otherwise

appropriate for any legitimate purpose.

**F.      Kane's Refusal to Pay Amounts Due under the Amended Notes
and Manulife's Enforcement Efforts**

56.      The amounts owed under the Amended Notes had become due by December 31,

2005.

57.      Kane did not pay the amounts owed under the Amended Notes when the amounts

came due.

58.      In a letter to Kane dated March 13, 2006, Manulife demanded the payment of

approximately $8 million in unpaid principal and interest owed and due on the Amended Notes.

A copy of this letter is annexed as Exhibit 6.

59.      Despite written demand, Kane has not paid Manulife the sum owed and due under

the Amended Notes.

60.      In December 2006, Manulife initiated an action against Kane, Adare, and TFKI in

the Delaware Chancery Court (the "Delaware Action") to ascertain the parties' rights and

obligations under the Pledge Agreement and the Amended Notes.

61.      Kane moved to dismiss that action for lack of personal jurisdiction in Delaware.

62.      The Delaware Chancery Court entered an order granting Kane's motion to

dismiss for lack of personal jurisdiction on or about June 16, 2008.

63.      Adare and TFKI remain defendants in the Delaware Action, and Manulife is

pursuing separate remedies as against Adare and TFKI for their respective breaches of the Pledge

Agreement.

**COUNT ONE**
**(Breach of Payment Obligations Under the Amended Notes as against Kane) –**
**CURRENTLY STAYED BY REASON OF KANE'S BANKRUPTCY**

64.     Manulife incorporates all the other paragraphs in its Amended Answer and Counterclaim as if set forth at length in this paragraph.

65.     Kane's refusal to pay the approximately $8 million in principal and interest due and owing under the Amended Notes constitutes a breach of the Amended Notes' payment obligations.

66.     Manulife has suffered and continues to suffer injury as a result of Kane's breach.

67.     But for the automatic stay imposed by reason of Kane's bankruptcy, Kane would be personally liable for such breach and for all resulting damages as a result of his improper and/or unlawful acts and omissions (including breach of trust) described throughout its Amended Answer and Counterclaim.

68.     Therefore, but for the automatic stay imposed by reason of Kane's bankruptcy, Manulife would be entitled to compensatory damages, consequential damages, punitive damages, interest, attorneys' fees, costs of suit, and such further relief as the Court deems just.

**COUNT TWO**
**(Judgment Declaring Rights and Obligations of Manulife and**
**Kane with Respect to the Collateral as a Result of Kane's Defaults as Against Kane) –**
**CURRENTLY STAYED BY REASON OF KANE'S BANKRUPTCY**

69.     Manulife incorporates all the other paragraphs in its Amended Answer and Counterclaim as if set forth at length in this paragraph.

70.     Kane executed the Amended Notes and the Pledge Agreement willingly, knowing in sum and substance the terms therein.  The Amended Notes and the Pledge Agreement are valid and binding contracts and obligations.

71.     Section 8 of the Pledge Agreement defines an "Event of Default" as "the occurrence of any failure, beyond any applicable grace period, by Kane in the due observance or performance of any term, covenant, agreement or condition contained in the Amended Notes [and] this [Pledge] Agreement."

72.     Kane breached the clear and unambiguous terms of the Amended Notes by, among other things, his refusal to pay the balance of the Amended Notes at maturity and upon demand for payment.

73.     These breaches constituted Events of Default pursuant to the Pledge Agreement.

74.     Kane also breached the clear and unambiguous terms of the Pledge Agreement by refusing to comply with certain terms therein, including, but not limited to, his failure to comply with (a) Section 2, which required that he direct Adare to pay to Manulife certain proceeds and payments to which Kane was entitled; (b) Section 5, which required that Kane "do such other acts and things and to execute such further documents as may be necessary or desirable to give effect the this [Pledge] Agreement and to perfect the security interest hereby granted in favor of Manulife,"; and (c) Section 6, which required that Kane cause to be delivered to Manulife certain financial information.

75.     These breaches also constituted Events of Default pursuant to the Pledge Agreement.

76.     Kane's breaches constituted Events of Default, upon the occurrence of which Manulife, among other things, may exercise all rights, powers and remedies available to it under the Pledge Agreement or under the U.C.C.  Ex. 1 ¶ 9.

77.     More than two years have passed since Manulife initially demanded payment from Kane of the amounts owed and due to Manulife pursuant to the Amended Notes and the Pledge Agreement.

78.     Kane has expressly denied liability for the amounts owed and due under the Amended Notes.

79.     An actual and justiciable controversy exists between Kane and Manulife as to their respective rights and obligations under the Amended Notes and the Pledge Agreement. But for the automatic stay imposed by reason of Kane's bankruptcy, by reason of the foregoing Manulife would be entitled to a judgment declaring that (a) Kane has defaulted under the express terms of the Amended Notes and the Pledge Agreement; (b) an "Event of Default" (or multiple Events of Default) as defined in Section 8 of the Pledge Agreement have occurred and, by reason of Kane's defaults, Manulife is entitled to exercise rights under the Pledge Agreement; and (c) Manulife may exercise all of its remedies and rights pursuant to the Amended Notes and the Pledge Agreement.

80.     Therefore, but for the automatic stay imposed by reason of Kane's bankruptcy, Manulife would be entitled to a declaration that Manulife is entitled to all damages resulting from enforcement and collection of the amounts due it, including all interest, attorneys' fees, costs of suit, and such further relief as the Court deems just.

## COUNT THREE
### (Breach of Section 6 of the Pledge Agreement (failure to provide documents and other information) as Against Kane) – CURRENTLY STAYED BY REASON OF KANE'S BANKRUPTCY

81.     Manulife incorporates all the other paragraphs in its Amended Answer and Counterclaim as if set forth at length in this paragraph.

82.     Section 6 of the Pledge Agreement requires Kane to deliver certain financial information and other documents relating to Adare to Manulife.

83.     Kane has failed to comply with Section 6 of the Pledge Agreement and, as a result, Manulife has suffered and continues to suffer injury.

84.     Therefore, but for the automatic stay imposed by reason of Kane's bankruptcy, Manulife would be entitled to compensatory damages, consequential damages, punitive damages, interest, attorneys' fees, costs of suit, and such further relief as the Court deems just.

**COUNT FOUR**
**(Breach of Section 2 of the Pledge Agreement (improper receipt by Kane of distributions from Adare) as Against Kane) –**
**CURRENTLY STAYED BY REASON OF KANE'S BANKRUPTCY**

85.     Manulife incorporates all the other paragraphs in its Amended Answer and Counterclaim as if set forth at length in this paragraph.

86.     Section 2 of the Pledge Agreement entitles Manulife to certain proceeds and payments to which Kane may be entitled by virtue of the Pledged Interest in Adare until the full amount of outstanding principal and interest on the Amended Notes is paid.  The Pledge Agreement is a valid and binding contract.

87.     Kane knowingly, and improperly, received funds from Adare by virtue of Kane's Pledged Interest in Adare (both directly in the form of funds characterized as limited partnership distributions to Kane, and in the form of funds indirectly paid to Kane after being characterized as payments to TFKI and others) without notifying Manulife, and without remitting such funds to Manulife, as required by the Pledge Agreement.

88.     Kane has breached Section 2 of the Pledge Agreement and, as a result, Manulife has suffered and continues to suffer injury.

89.     Additionally, as set forth in Article 10 (ii) of each of the Amended Notes (Exs. 2-4 hereto), Manulife is entitled to collect directly from Kane "any cash or property received by [Kane] as a distribution from PKLC I or Adare."

90.     Therefore, but for the automatic stay imposed by reason of Kane's bankruptcy, Manulife would be entitled to compensatory damages, consequential damages, punitive damages, interest, attorneys' fees, costs of suit, and such further relief as the Court deems just.

### COUNT FIVE
**(Breach of Section 5 of the Pledge Agreement (improper dilution of Kane's limited partnership interests in Adare) as Against Kane) – CURRENTLY STAYED BY REASON OF KANE'S BANKRUPTCY**

91.     Manulife incorporates all the other paragraphs in its Amended Answer and Counterclaim as if set forth at length in this paragraph.

92.     In Section 5 of the Pledge Agreement, Kane "agree[d] to maintain the Pledge Interest free from any liens (except for those created by this Agreement) and to do such other acts and things and to execute such further documents as may be necessary or desirable to give effect to this Agreement and to perfect the security interest hereby granted in favor of Manulife."

93.     Kane breached Section 5 by taking actions which adversely affected Manulife's interests in the pledged collateral including, but not limited to, his willful dilution of the Collateral and his wrongful distribution of a percentage of his limited partnership interests in Adare to his family members and possibly others.

94.     Section 9 of the Pledge Agreement preserves Manulife's rights to "exercise all rights, powers and remedies available to it hereunder" in the "Event of Default," by Kane, which terms is defined as "the occurrence of any failure, beyond any applicable grace period, by Kane in the due observance or performance of any term, covenant, agreement or condition contained in the Amended Notes [and] this [Pledge] Agreement."

95.     Kane's failure to properly preserve Manulife's property interests in the Collateral constitutes a breach of the Pledge Agreement.

96.     Therefore, but for the automatic stay imposed by reason of Kane's bankruptcy, Manulife would be entitled to compensatory damages, consequential damages, punitive damages, interest, attorneys' fees, costs of suit, and such further relief as the Court deems just.

**COUNT SIX**
**(Breach of the Implied Covenant of Good Faith and Fair Dealing as Against Kane) –**
**CURRENTLY STAYED BY REASON OF KANE'S BANKRUPTCY**

97.     Manulife incorporates all the other paragraphs in its Amended Answer and Counterclaim as if set forth at length in this paragraph.

98.     Kane's improper and/or unlawful acts and omissions, as described throughout Manulife's Answer and Counterclaim, constitute breach of the implied covenant of good faith and fair dealing in the Amended Notes and the Pledge Agreement.

99.      Manulife has suffered and continues to suffer injury as a result of Kane's breach.

100.    Therefore, but for the automatic stay imposed by reason of Kane's bankruptcy, Manulife would be entitled to compensatory damages, consequential damages, punitive damages, interest, attorneys' fees, costs of suit, and such further relief as the Court deems just.

**COUNT SEVEN**
**(Judicial Sale as Against Kane) –**
**CURRENTLY STAYED BY REASON OF KANE'S BANKRUPTCY**

101.    Manulife incorporates all the other paragraphs in its Amended Answer and Counterclaim as if set forth at length in this paragraph.

102.    As a result of the events of default by Kane under the Amended Notes and Pledge Agreement, the Pledge Agreement permits Manulife to foreclose the Collateral and obtain a judicial sale.

103.    But for the automatic stay imposed by reason of Kane's bankruptcy, the Court should require that Kane cause to be delivered to Manulife any additional information required to market effectively Manulife's interest in the Collateral.

104.    But for the automatic stay imposed by reason of Kane's bankruptcy, to ensure that the maximum value for the Collateral is achieved the Court should hold a judicial sale.

**COUNT EIGHT**
**(Conversion as Against Kane and Mrs. Kane) –**
**CURRENTLY STAYED AS TO KANE ONLY (NOT AS TO MRS. KANE) BY REASON**
**OF KANE'S BANKRUPTCY**

105.    The Counterclaim Plaintiffs incorporate all the other paragraphs in its Amended Answer and Counterclaim and this First Amended Counterclaim as if set forth at length in this paragraph.

106.    The Pledge Agreement granted Manulife a 24% interest in Adare unless and until Kane's obligations under the Amended Notes were satisfied, and a right to proceeds and payments to which Kane was entitled by virtue of the Pledged Interest in Adare.

107.    Kane and Mrs. Kane intentionally, willfully, and without authority from Manulife and/or Gerlach interfered with Manulife's and/or Gerlach's right of possession to the pledged limited partnership interest in Adare and Manulife's and/or Gerlach's right to proceeds and payments to which Kane was entitled by virtue of the Pledged Interest in Adare.

108.    As a result of Kane's and Mrs. Kane's actions, Manulife and/or Gerlach have suffered and continue to suffer injury.

109.    Therefore, as against Mrs. Kane only, Manulife and/or Gerlach are entitled to compensatory damages, consequential damages, punitive damages, interest, attorneys' fees, costs of suit, and such further relief as the Court deems just.

## COUNT NINE
### (Fraudulent Conveyance as Against Kane and Mrs. Kane for Their Conveyances to Others)-
### CURRENTLY STAYED AS TO KANE ONLY (NOT AS TO MRS. KANE) BY REASON OF KANE'S BANKRUPTCY

110.   The Counterclaim Plaintiffs incorporate all the other paragraphs in its Amended Answer and Counterclaim and this First Amended Counterclaim as if set forth at length in this paragraph.

111.   Using their control of TFKI (and thus their control of Adare), Kane and Mrs. Kane fraudulently conveyed Kane's interest in the Pledged Interest, and proceeds and payments to which Kane was entitled by virtue of the Pledged Interest in Adare, to Kane's family and others, without informing Manulife and/or Gerlach of said conveyances, and with the intent of defrauding and/or hindering payments owed to Manulife and/or Gerlach and defrauding Manulife and/or Gerlach of rights to the Pledged Interest.

112.   As a result of such fraudulent conveyances, Manulife and/or Gerlach have suffered and continue to suffer injury.

113.   Therefore, as against Mrs. Kane only, Manulife and/or Gerlach are entitled to compensatory damages, punitive damages, interest, attorneys' fees, costs of suit, and such further relief as the Court deems just.

## COUNT TEN
### (Fraudulent Conveyance as Against Mrs. Kane for Fraudulent Conveyances to Mrs. Kane)

114.   The Counterclaim Plaintiffs incorporate all the other paragraphs in its Amended Answer and Counterclaim and this First Amended Counterclaim as if set forth at length in this paragraph.

115.    Kane and Mrs. Kane fraudulently conveyed to Mrs. Kane proceeds and payments to which Kane was entitled by virtue of the Pledged Interest in Adare and which Kane was obligated to remit to Manulife and/or Gerlach.

116.    Mrs. Kane accepted such proceeds and payments in bad faith.

117.    Mrs. Kane intended to hinder, delay and defraud Manulife and/or Gerlach from obtaining such proceeds and payments.

118.    As a result of such fraudulent conveyances, Manulife and/or Gerlach have suffered and continue to suffer injury.

119.    Therefore, Manulife and/or Gerlach are entitled to compensatory damages, punitive damages, interest, attorneys' fees, costs of suit, and such further relief as the Court deems just.

## COUNT ELEVEN
### (Tortious Interference with Economic Advantage as Against Mrs. Kane)

120.    The Counterclaim Plaintiffs incorporate all the other paragraphs in its Amended Answer and Counterclaim and this First Amended Counterclaim as if set forth at length in this paragraph.

121.    Manulife and/or Gerlach had an interest in the Pledged Interest in Adare, and in proceeds and payments to which Kane may be entitled by virtue of the Pledged Interest in Adare, which was protected by the Pledge Agreement.

122.    By reason of the foregoing actions alleged in this Amended Counterclaim, Mrs. Kane was aware of, and intentionally and unjustifiably interfered with, Manulife and/or Gerlach's aforesaid protected interests.

123.    As a result of Mrs. Kane's actions, Manulife and/or Gerlach have suffered and continue to suffer damages.

124.    Therefore, Manulife and/or Gerlach are entitled to compensatory damages, punitive damages, interest, attorneys' fees, costs of suit, and such further relief as the Court deems just.

**WHEREFORE,** The Manufacturer's Life Insurance Company and Gerlach (Nominee) & Co., L.L.C. request entry of declaratory judgment in their favor and an award of compensatory damages, consequential damages, punitive damages, interest, attorneys' fees, costs of suit, and such further relief as the Court deems just.  In light of the stay of this action as to Thomas Kane, Gerlach does not assert any claims or seek any relief as against Thomas Kane in this First Amended Counterclaim.

Respectfully submitted,

DATED: December 2, 2011_____

*Darren H. Goldstein*
Darren H. Goldstein
Donna T. Urban
FLASTER/GREENBERG P.C.
Commerce Center
1810 Chapel Ave. West
Cherry Hill, NJ 08002
Tel: 856-661-1900

1897803 v1

22